UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DENISE MARIE CARTER, | ) |
|       Plaintiff, | ) ) ) |
|       v. | ) ) Case No. 4:22-cv-46 |
| DUSTY STURGEON, JASON MCCLANNE, and LAFAYETTE HOUSING AUTHORITY, | ) ) ) ) ) |
|       Defendants. | ) ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to Dismiss [DE 13] filed by the defendants, Dusty Sturgeon, Jason McClannen, and Lafayette Housing Authority, on August 15, 2022. For the following reasons, the Motion [DE 13] is **GRANTED.**

*Background*

The plaintiff, Denise Marie Carter, filed a *pro se* complaint on June 23, 2022, against the defendants, Dusty Sturgeon, Jason McClannen[1], and the Lafayette Housing Authority (LHA), alleging that they discriminated against her by denying her application for housing assistance.

In her complaint, Carter alleges that LHA denied her application for housing assistance on August 9, 2021, due to a 2015 felony drug conviction. Also in her complaint, she states that she was a victim of domestic violence and had physical disabilities due to a bout with cancer. Despite that, she only connects the allegedly illegal denial of housing assistance by LHA to the fact that she was a convicted felon. She claims that Sturgeon embarrassed and humiliated her

---

[1] Carter's complaint names a "Jason McClanne", but the defendants represent that no one by that name has ever been employed by LHA. Rather, a man by the name of Jason McClannen was an LHA employee during the relevant time period. Therefore, the defendants presume that is who Carter is referring to in her complaint.

when Sturgeon communicated to her that her application for housing benefits had been denied due to the felony drug conviction.  Lastly, Carter claims that she was denied the right to appeal the denial of housing assistance, but also states that she was granted a request for an informal review which ultimately affirmed the denial.

The defendants filed the instant motion moving to dismiss the complaint pursuant to **Federal Rule of Civil Procedure 12(b)(6)**, arguing that Carter has failed to state a claim upon which relief can be granted. Carter responded in opposition [DE 24] on October 12, 2022. The defendants have not filed a reply, and the time to do so has now passed.

*Discussion*

As an initial matter, the defendants have requested that the court take judicial notice of LHA's Administrative Plan (Administrative Plan).  **Federal Rule of Civil Procedure 12(d)** provides that "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  However, the Seventh Circuit has recognized a narrow exception to this rule.  District courts are entitled to take judicial notice of outside "matters of public record without converting a motion for failure to state a claim into a motion for summary judgment" if they are "not subject to reasonable dispute and either generally known within territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." **General Elec. Capital Corp. v. Lease Resolution Corp.**, 128 F.3d 1074, 1080 (7th Cir. 1997); **Ennenga v. Starns**, 677 F.3d 766, 773-74 (7th Cir. 2012).

While acceptable outside matters have included public court documents, "courts generally cannot take judicial notice findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed." **Lopez v. Pastrick**, 2011

WL 2357829, at *4 (N.D. Ind. June 8, 2011) (*quoting* **General Elec. Capitol Corp.**, 128 F.3d at 1082 n.6)); **Opoka v. I.N.S.**, 94 F.3d 392, 395 (7th Cir. 1996); **Fedex Ground Package System, Inc., Employment Practices Litig.**, 2010 WL 1253891, at *6 (N.D. Ind. Mar. 29, 2010) (finding that "the court can take judicial notice of filings in other proceedings to establish the fact of such litigation and related filings"); **ABN AMRO, Inc. v. Capital Int'l Ltd.**, 2007 WL 845046, at *9 (N.D. Ill. March 16, 2007) ("judicial notice is generally not for the truth of the matters asserted in a court document"). Ultimately, the Seventh Circuit cautions that "courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." **General Elec. Capitol Corp.**, 128 F.3d at 1081.

The defendants argue that the narrow exception permitting matters of public record applies here, and therefore the motion does not have to be analyzed as one for summary judgement. While district courts are permitted to take judicial notice of public court documents, the Seventh Circuit points to the Federal Rules of Evidence as guidance on this issue. **Federal Rule of Evidence 201** describes the kinds of facts that may be judicially noticed as follows: "(1) facts that are generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite." **Mayes v. City of Hammond, Ind.**, 2006 WL 1765407, at *5 (N.D. Ind. June 21, 2006) (Cherry, Magistrate Judge) (taking judicial notice of a criminal conviction but declining to take judicial notice of underlying DNA evidence or its validity). The Administrative Plan fits these criteria: it is publicly available, it is not factually disputed, and it is derived from sources whose accuracy cannot reasonably be questioned. *See* **Swanigan v. City of Chi**., 881 F.3d 557 (7th Cir. 2019) (taking judicial notice of facts from a prior proceeding within the same case);

3

*Estate of Brown v. Arc Music Group*, 523 Fed.Appx. 407, 410 (7th Cir. 2013) (taking judicial notice of a settlement agreement); *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (taking judicial notice of facts recited in a plea agreement); *Philips Med. Sys. Int'l v. Bruetman*, 982 F.2d 211, 215 (7th Cir. 1992) (taking judicial notice of a default judgment); *Ryan v. Phillip Morris USA, Inc.*, 2007 WL 270119, at *1 (N.D. Ind. Jan. 26, 2007) (taking judicial notice of a probate file). Therefore, the court takes judicial notice of the Administrative Plan and will evaluate the instant motion under the **Rule 12(b)(6)** standard.

**Federal Rule of Civil Procedure 12(b)(6)** allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." In order to survive a **Rule 12(b)(6)** motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570); *Cincinnati Life Ins.*, 722 F.3d at 946 ("The primary purpose of [Fed.R.Civ.P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims") (quoting *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)); *Peele v. Clifford Burch*, 722 F.3d 956, 959 (7th Cir. 2013) (explaining that one sentence of facts combined with boilerplate language did not satisfy the requirements of Rule 8); *Joren v. Napolitano*, 633 F.3d. 1144, 1146 (7th Cir. 2011). This pleading standard applies to all civil matters. *Iqbal*, 556 U.S. at 684.

The Supreme Court has suggested a two-step process for a court to follow when considering a motion to dismiss. First, any "well-pleaded factual allegations" should be assumed to be true by the court. Next, these allegations can be reviewed to determine if they "plausibly" give rise to a claim that would entitle the complainant to relief. *Iqbal*, 556 U.S. at 678–79; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010). Reasonable inferences from well-

4

pled facts must be construed in favor of the plaintiff. ***Murphy v. Walker***, 51 F.3d 714, 717 (7th Cir. 1995); ***Maxie v. Wal-Mart Store***, 2009 WL 1766686, at *2 (N.D. Ind. June 19, 2009) (same); ***Banks v. Montgomery***, 2009 WL 1657465, at *1 (N.D. Ind. June 11, 2009) (same).

LHA "is a governmental or public body, created and authorized by state law to develop and operate housing and housing programs for low-income families." [DE 14-1 at pg. 31]. LHA receives funding from the United States Department of Housing and Urban Development (HUD) and "must ensure compliance with federal laws, regulations and notices and must establish policy and procedures to clarify federal requirements and to endure consistency in program operation." [DE 14-1 at pg. 31].

Every public housing authority must establish an "administrative plan." Each public housing authority is afforded discretion within the regulatory framework to formulate its own administrative plan. For example, HUD permits housing authorities to establish policies that prohibit the admission of any applicant who has engaged in "drug-related criminal activity" within a reasonable time before admission. **24 C.F.R. § 982.553(a)(2)(ii)(A)(1)**. What constitutes a reasonable amount of time is left for the individual public housing authority to determine.

LHA's Administrative Plan, as it relates to applicants with a prior felony drug conviction, states as follows:

> "Drug-related criminal activity, defined by HUD, as the illegal manufacture, sale, distribution, or use of a drug, or the possession of a drug with intent to manufacture, sell, distribute or use the drug [24 CFR 5.100] if **1 FELONY conviction within the past 7 years** …"

[DE 14-1 at pg. 88]. (Emphasis included in original). LHA's Administrative Plan indicates that in making the decision to deny assistance based on a felony drug conviction, it will consider the following factors, "using the concept of the preponderance of the evidence", on a case by case

5

basis: the seriousness of the case, the effects that denial of assistance may have on the applicant, the extent of participation or culpability, the length of time since the violation occurred, whether the culpable applicant is participating in or has successfully completed a supervised long-term drug or alcohol rehabilitation program. [DE 14-1 at pgs. 88, 94].

Upon applying for housing assistance through LHA, Carter had been a convicted felon for six years. Specifically, she pled guilty to, and was convicted of, one count of Possession of Methamphetamine, a level 6 felony, and one count of Possession of Chemical Reagents or Precursors with Intent to Manufacture a Controlled Substance, also a level 6 felony, in Newton Superior Court, State of Indiana. As part of her plea agreement, Carter agreed to "attend Intensive Outpatient Therapy through Wabash Valley Alliance, Inc.," though she neither stated in her complaint nor provided evidence that she did so.

As described above, LHA has the sole discretion to establish policies for applicants with felony drug convictions. Carter is not disputing the fact that she is a convicted felon, nor that she was a felon convicted of drug offenses less than 7 years old at the time she applied for benefits. She appears to be challenging the legality of LHA's decision on the basis in which it was communicated to her. Her complaint states that Sturgeon embarrassed and humiliated her when informing her that her application had been denied.[2]

First, LHA's reason for denying Carter benefits was proper under the policy. In fact, both Carter and the defendants acknowledge her ability to reapply for benefits through LHA now that her conviction is more than seven years old. Moreover, Carter's passing statements of being a victim of domestic abuse or being physically disabled contained in the complaint have no connection to the defendants' alleged discrimination or denial of benefits. Assuming *arguendo*,

---

[2] The court notes that Carter does not state McClannen's name anywhere in the complaint other than the caption.

6

that Carter did tie her physical disabilities or domestic violence situation to LHA's denial of benefits and viewing those facts in a light most favorable to her, the complaint is still devoid of factual allegations sufficient to state a claim for which relief could be granted. In both her Complaint and her Response to the instant motion, Carter seeks recovery for the denial of benefits based on her felony conviction. She has not argued that her health or victim status caused the rejection.

Carter also asserts that she was denied a right to appeal but was granted an informal review. Under the Administrative Plan, if an applicant is denied assistance, the applicant is entitled to appeal the decision.  There is a distinction between the type of appeal offered to applicants versus participants.  Applicants are entitled to an informal review whereas participants are entitled to an informal hearing.[3] [DE 14-1 at pg. 429].  Carter had applicant status, as she was had applied for admission, but was not yet accepted.  Therefore, she was entitled to an informal review.

Carter was granted an informal review which ultimately affirmed the denial of benefits based on the felony drug conviction.  She does not allege that the review was conducted contrary to policy, rather she claims that the decision was sent out the same day as the review even though the reviewing officer had ten days from the date of the review to send out the decision, that the reviewing officer did not negotiate with her, and that the decision was based solely on her felony drug charge.  Again, and even while viewing these factual allegations as true, Carter fails to show how LHA violated its policy when conducting the review. Carter's complaint suggests that she merely disagrees with the outcome.  Disagreement with an outcome reached properly under the policy is insufficient grounds for which relief could be granted.

---

[3] An applicant "is someone who has applied for admission to the program but is not yet a participant in the program." [DE 14-1 at pg. 429].

Finally, while it is not clear in the complaint whether Carter is also suing Sturgeon individually, it does appear that she is claiming something along the lines of intentional infliction of emotional distress (IIED) against Sturgeon. Since IIED is a state law claim, the court first must determine whether it has jurisdiction over Sturgeon as it relates to this claim.

Under **28 U.S.C. §1367(a)**, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* ***Exxon Mobil Corp. v. Allapattah Services, Inc.***, 545 U.S. 546, 552 (2005) (holding that "it is well established – in certain classes of cases – that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy" that would not alone grant a court original jurisdiction). Since the facts giving rise to the IIED claim against Sturgeon arise out of the same nucleus of operative fact as those giving rise to the claim against LHA for the denial of housing benefits, this court does have supplemental jurisdiction over the IIED claim.

Under Indiana law, in order to state a claim for IIED, the plaintiff must show that the defendant (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress to another. ***Branham v. Celadon Trucking Services, Inc.***, 744 N.E.2d 514, 523 (Ind. App. 2001). Here, Carter alleges that Sturgeon humiliated her when she communicated the reason for the denial of housing benefits, her drug conviction.  Carter also claims that Sturgeon laughed at her and made her "feel like a failure no good person." (DE 1-2 at pg. 5).

Not only must a plaintiff show that the defendant engaged in extreme and outrageous conduct when alleging IIED under Indiana law, but she also must show that the defendant's alleged conduct "exceed[ed] all bounds usually tolerated by a decision society and caus[ed] mental distress of a very serious kind." ***Ledbetter v. Ross***, 725 N.E.2d 120, 124 (Ind. App. Ct. 2000) (finding no IIED where the "facts reveal[ed] only that [the defendant] communicated information which [the plaintiff's] insurance company apparently provided him without her permission"). While Sturgeon's behavior may have been inappropriate, the requirements of proving IIED are "rigorous," and Carter has failed to meet that standard. ***Ledbetter***, 725 N.E.2d at 124.

On a final note, as stated above, Carter does not address McClannen or his alleged involvement in this matter anywhere in the complaint, besides the caption. Therefore, she has also failed to state any claim against him.

Based on the foregoing reasons, the Motion to Dismiss [DE 13] is **GRANTED.** This case is now closed.

ENTERED this 28th day of November, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge